**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

William Crigler, Individually and on Behalf of      Civil Action No. 2:19-cv-00604-MJH
All Other Persons Similarly Situated,

         Plaintiff,

         v.

Seven Point Energy Services, Inc.,

         Defendant.


**MEMORANDUM IN SUPPORT OF THE CONSENT MOTION FOR
<u>FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT</u>**

## I.    __INTRODUCTION__

Plaintiff William Crigler, on behalf of himself and the Settlement Class Members, and defendant Seven Point Energy Services, Inc. ("Defendant" or "Seven Point"), have reached a global settlement of the above-captioned action. The central claims in this action arise from Seven Point's alleged violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§201 *et seq.*, the Pennsylvania Minimum Wage Act 43 P.S. 333.101, *et seq*. ("PMWA"), and the Ohio Minimum Fair Wage Standards Act, R.C. 4111.03, *et seq*. ("OMFWSA"). The proposed settlement resolves those and any related claims in consideration for $100,000.00 (the "Settlement"). *See* Settlement Agreement § III.1.[1] Plaintiff respectfully submits that this Settlement, which will pay to claimants their actual damages, representing a dollar for dollar recovery, is an eminently just, reasonable, and adequate result and deserves final approval.

This Court previously issued preliminary approval of the Settlement, finding it "to be fair, reasonable and adequate, negotiated and entered into at arm's length and in good faith…." *See* ECF No. 28, Preliminary Approval Order, ¶ 4. Plaintiff now moves this Honorable Court to grant final approval of the Settlement and approval of class counsels' fees and expenses, as well as an incentive award to Plaintiff.

The Settlement arises from real, material, factual, and legal disputes – whether Seven Point's hourly employees were properly paid overtime under federal and state laws. The Settlement will end a year of litigation, which would likely have continued for at least many more, at substantial expense to the parties and the resources of the Court. The Settlement will provide a meaningful, substantial, and direct monetary benefit to all class members, as no class member either objected or excluded themselves from the Class.

---

[1] Attached as Exhibit A to Plaintiff's Memorandum in Support of the Consent Motion for Preliminary Approval (ECF No. 26).

Accordingly, Plaintiff respectfully requests that this Court enter final approval of the Settlement, and enter an order providing for the following:

1.    Final approval of the Settlement;

2.    Final certification of a collective under Section 216(b) of the Fair Labor Standards Act ("FLSA");[2]

3.    Final certification of settlement class under Federal Rule of Civil Procedure 23;

4.    Final judgment on all claims in this action and dismissal of the action as settled and dismissed with prejudice;

5.    Approval of the incentive award to William Crigler; and

6.    Approval of the attorney's fees and expense reimbursement.

A proposed order is submitted as Exhibit 1 to this motion.

## II.    <u>STATEMENT OF THE CASE</u>

Plaintiff William Crigler filed his Complaint on May 22, 2019, alleging violations of the FLSA, PMWA, and the OMFWSA. *See* Plaintiff's Complaint ("Compl." or "Complaint") (ECF No. 1). The Complaint sought certification of an opt-in collective action for the FLSA claims and Rule 23 class certification of Pennsylvania and Ohio state law claims. *Id.* Plaintiff initiated this action to recover allegedly unpaid wages under the FLSA and Pennsylvania and Ohio state law on behalf of himself and other similarly situated hourly employees who worked for Defendant. *See generally* Compl. He alleged that Defendant failed to pay time and one-half overtime for all hours worked over 40 in a workweek. *Id.* Plaintiff alleged that throughout the relevant time period, Defendant paid hourly employees such as Mr. Crigler an additional $1.25 per hour worked for a Safety Surge bonus. *Id.* at ¶ 21. Plaintiff alleges that this bonus was not discretionary, and as such,

---

[2] Defendant has agreed not to oppose certification of a collective under the FLSA and an Ohio state law class under FRCP 23 solely for purposes of settlement.

should have been added into the regular rate for the purposes of calculating the overtime rate. *Id.* at ¶ 23.

Defendant filed its Answer on October 2, 2019. *See* Ans. (ECF No. 12). The parties have each served and responded to interrogatories, and document requests focused on conditional certification issues. *See* Declaration of Nicholas A. Migliaccio In Support of Plaintiff's Unopposed Motion for Final Approval of Settlement ("Migliaccio Dec."), attached hereto as Exhibit 1, ¶ 2. Plaintiff received classwide information, including pay rates, hours worked, and wages earned. *Id.*

The parties discussed a potential settlement of this case during the court-mandated mediation pursuant to the Court's ADR Policies and Procedures. On January 14, 2020, the parties engaged in an in-person mediation in Pittsburgh, PA, with mediator Carol Katz, Esquire. Migliaccio Dec. ¶ 3. Thereafter, the parties reached an agreement, the terms of which are formally and fully memorialized in the Settlement Agreement and presented to the Court. *See* Settlement Agreement. On April 23, 2020, Plaintiff submitted a consent motion for preliminary approval of the Settlement and the notice thereof. *See* ECF No. 26. This Court granted preliminary approval. *See* ECF No. 28.

Notice of the Settlement was sent to over 130 settlement class members by Class Counsel. *See* Declaration of D. Aaron Rihn in Support of Plaintiff's Unopposed Motion for Final Approval of Settlement ("Rihn Dec."), attached hereto as Exhibit 2, ¶ 2. There have been no objections to the Settlement. *Id.* at ¶ 15. Similarly, there have been no Settlement Class Members seeking exclusion. *Id.* As such, all Settlement Class Members are poised to receive a disbursement of the Settlement Payments and, this matter is now ripe for certification of the Settlement Class, the entry of final approval of the Settlement, and dismissal of the action.

### III.  <u>LEGAL STANDARDS</u>

### A.  STANDARD FOR CLASS CERTIFICATION

Plaintiff requests that the Court certify the Settlement Class for settlement purposes only. The proposed Class would be certified under Federal Rule of Civil Procedure 23, which requires that a named plaintiff satisfy the four elements of Rule 23(a), and one or more requirements of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997); *McCall v. Drive Fin. Servs.*, L.P., 236 F.R.D. 246, 249 (E.D. Pa. 2006); *Parks v. Portnoff Law Associates, Ltd.*, 210 F.R.D. 146, 149 (E.D. Pa. 2002).

Certification of the Settlement Class is warranted here for several reasons. Most significantly, before entering the Preliminary Approval Order, this Court examined the record and preliminarily certified the Settlement Class. *See* ECF No. 28. Nothing has changed in the record that would compel the Court to reach a different conclusion with respect to the final, rather than preliminary, approval of the Settlement Class. Finally, as set forth below, this case satisfies every requirement for certifying the Settlement Class.

### B.  STANDARD FOR FINAL APPROVAL

The settlement of class action litigation is favored and encouraged in the Third Circuit. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts").[3] The Federal Rules mandate that a "class action shall not be dismissed or compromised without the approval of the court." Fed. R. Civ. P. 23(e).

---

[3] *See also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *In re General Motors Corporation Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlements, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *In re School Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1986) (noting Third Circuit's policy of "encouraging settlement of complex litigation that otherwise would linger for years").

Further, "[t]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *G.M. Trucks,* 55 F.3d at 785.

To determine whether the settlement is fair, reasonable and adequate under Rule 23(e), courts in the Third Circuit apply the nine-factor test enunciated in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), which was recently reaffirmed in *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016). These factors are: 1) The complexity, expense, and likely duration of the litigation; 2) the reaction of the class to the settlement; 3) the stage of the proceedings and the amount of discovery completed; 4) the risks of establishing liability; 5) the risks of establishing damages; 6) the risks of maintaining the class action through the trial; 7) the ability of the defendants to withstand a greater judgment; 8) the range of reasonableness of the settlement fund in light of the best possible recovery; and 9) the range of reasonableness of the settlement. *See Girsh,* 521 F.2d at 156-57. While Class Counsel believes that each of these factors supports final approval of the settlement, the Third Circuit has stressed that the most relevant consideration is whether the proposed settlement is within a "range of reasonableness" in light of all costs and risks of continued litigation; that is, the test is whether the proposed settlement is fair and reasonable under the circumstances. *Prudential II,* 148 F.3d at 322.

## IV.    CERTIFICATION OF THE SETTLEMENT CLASS

Rule 23(a) provides that a class should be certified if (1) the class members are so numerous that joinder of all members is impracticable; (2) the action addresses questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *see also Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 140-141 (3d Cir. 1998); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148

F.3d 283, 308-09 (3d Cir. 1998) ("*Prudential II*"). These four elements are referred to in the short-hand as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *In re Corel Corp. Secs. Litig.*, 206 F.R.D. 533, 539 (E.D. Pa. 2002).

Here, all four elements are satisfied for purposes of certifying the proposed Settlement Class. Indeed, as one court aptly observed, "cases involving wage claims present perhaps 'the most perfect questions for class treatment.'" *Altnor v. Preferred Freezer Servs.*, 197 F. Supp. 3d 746, 756-757 (E.D. Pa. 2016) (quoting *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007)).

### A. NUMEROSITY

Neither Seven Point, nor any objector, challenges the size of the Settlement Class, and the law does not establish a strict numerical test. *Cohen v. Chi Title Ins. Co.*, 242 F.R.D. 295, 299 (E.D. Pa. 2007) (a "class does not need a magic number of claimants" nor must the "[plaintiffs] allege the exact number or identity of the class members"). Accordingly, whenever "substantial numbers" of people are affected, this requirement is satisfied. *Glazer*, 722 F.3d at 852 (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). There are over one hundred 130 individuals in the Settlement Class. *See* Migliaccio Dec. at ¶ 16. This is a substantial number of people, and the joinder of all of them in a single action would be impracticable and wasteful of the resources of the parties and the judiciary. *See, e.g., Graudins*, 2017 U.S. Dist. LEXIS 25926, *9 (granting certification of settlement class and finding numerosity met where "joinder of 241 individuals would be impracticable").

### B. COMMONALITY

"[T]he commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the defendant and the general policy is the focus of

the litigation." Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury." *Wal-Mart*, 131 S. Ct. at 2548, 2551; *see also Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). The commonality inquiry focuses on the defendant's conduct. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (noting "commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members"). "Commonality exists when proposed class members challenge the same conduct of the defendants." *Schwartz v. Dana Corp.*, 196 F.R.D. 275, 279 (E.D. Pa. 2000). Here, the commonality requirement is satisfied because, among other things, class members were allegedly subjected to the same overtime pay methodology and recordkeeping practices and, during the relevant time period, purportedly performed their job duties pursuant to similar policies, procedures, and expectations. As such, the success or failure of each class member's claim generally turns on the common question of whether Defendant's pay methodology violated the FLSA, Pennsylvania, and Ohio laws.

## C. TYPICALITY

Fed. R Civ. P. 23. Whereas commonality evaluates the sufficiency of the class, typicality judges the sufficiency of the named plaintiffs as representatives of the class. *Baby Neal*, 43 F.3d at 57. A plaintiff's claim is typical of a class' claims if it challenges the same conduct that would be challenged by the class. *See, e.g.*, *Ikon Office Solutions, Inc. Litig*., 191 F.R.D. at 463; *In re Centocor Secs. Litig. III.*, No. 98-cv-260, 1999 U.S. Dist. LEXIS 1224 (E.D. Pa Jan. 27, 1999) at *6 (noting that typicality requirement of Rule 23(a)(3) is satisfied where "litigation of the named plaintiffs' claims can reasonably be expected to advance the interests of absent class members"). As one district court in this Circuit aptly noted in granting class certification to a PMWA claim, "the principal questions presented by the suit go to [defendant's] corporate policies. The

controversy here is whether those policies violate the PMWA and whether those policies were applied to Plaintiff and other potential class members." *Soles v. Zartman Constr., Inc.,* No. 13-cv-29, 2014 U.S. Dist. LEXIS 98181, *16 (M.D. Pa. July 18, 2014). Similarly, typicality exists here because Plaintiff and every class member share the same interest of recovering damages based on the same legal theories: that Defendant's failure to include Safety Surge bonuses in its overtime calculations violated the FLSA and violated Pennsylvania and Ohio state wage and hour laws.

### D.  ADEQUACY OF REPRESENTATION

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "The adequacy requirement encompasses two distinct inquires designed to protect the interests of absentee class members: whether the named plaintiffs' interests are sufficiently aligned with the absentees', and the qualifications of the counsel to represent the class." *Ripley v. Sunoco, Inc.,* 287 F.R.D. 300, 309 (E.D. Pa. June 26, 2012); *see also Dewey v. Volkswagen Aktiengesellschaft,* 681 F.3d 170, 182 (3d Cir. 2012).

Here, both aspects of Rule 23(a)(4)'s adequacy requirement are satisfied. As more fully set forth below, class counsel is experienced in class and collective actions and other complex litigation. Class counsel devoted over 200 hours investigating and litigating the case and evaluating whether the Settlement is in the interests of the settlement class. They have concluded that the Settlement is not merely fair and beneficial; they have concluded that the Settlement is an extremely good one for a case like this. *See* Migliaccio Dec. at ¶ 7. Mr. Crigler demonstrated commitment, perseverance, and competence in representing the interests of the entire class. As such, he has proven himself more than adequate to serve as a representative of the settlement class and has proven that he has no interest adverse or "antagonistic" to absent Settlement Class Members.

### E.  PREDOMINANCE AND SUPERIORITY

"Rule 23(b)(3) requires a showing that *questions* common to the class predominate" and a showing that "common questions [ ] can be proved through evidence common to the class." *Glazer,* 722 F.3d at 858 (quoting *Amgen, Inc. v. Conn. Retirement Plans & Trust Funds,* 133 S. Ct. 1184, 1191, 1195-96 (2013)). "A plaintiff need not prove that each element of a claim can be established by classwide proof," only that common questions "*predominate* over any questions affecting only individual class members." *Id.* (quoting *Amgen, Inc.*, 133 S. Ct. at 1196)). Furthermore, this requirement "does not demand unanimity of common questions," it merely requires that the common questions outweigh individual questions. *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 254 (E.D. Pa. 2006) (citing *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 185 (3d Cir. 2001)).

In this case, the proposed class satisfies the Rule 23(b)(3) predominance requirement because all class members share a common set of core, predominant alleged facts and legal issues, including, (a) class members were required to follow uniform job expectations, standardized training materials, and operational protocols, and (b) class members were subjected to standardized payroll and timekeeping practices. Defendants' alleged practices did not vary with regard to individual Settlement Class members.

Additionally, Rule 23 certification of the Settlement Class, in the context of settlement, is also "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R Civ. P. 23. Absent class certification here, many putative Settlement Class Members would go uncompensated for Defendants' alleged wrongdoing. *See e.g.*, *MacNeal v. Columbine Exploration Corp.*, 123 F.R.D. 181, 187 (E.D. Pa. Dec. 1, 1988) (finding superiority where individual class members "have small interests, and individually they might not have the

wherewithal to bring suit to protect their individual rights"). Were each hourly employee required to file an individual lawsuit, it would result in over 130 lawsuits each alleging virtually identical claims. Thus, resolving the Settlement Class Members' claims in a single, consolidated settlement proceeding is far superior to individual adjudication of their claims.

## V.   FINAL APPROVAL OF THE SETTLEMENT

To determine whether a settlement ought to be approved, district courts must consider whether the settlement arises from the parties seeking to avoid a legitimate legal or factual dispute. Throughout this litigation, Defendant has vigorously denied and continues to deny liability. Defendant contends it has multiple defenses to Plaintiff's claims.

Defendant has raised several defenses to Plaintiff's claims. For example, Plaintiff maintains that his regular rate of pay (the rate which would provide the basis for the time and half rate) is arrived at by dividing his base salary and stage bonuses by 40 hours per week. Defendant disputes the number of overtime hours claimed by Plaintiff, whether Safety Surge bonuses must be included in Plaintiff's regular rate and Plaintiff's methodology for determining the regular rate of pay. Defendant also contends that Plaintiff's claims are barred or limited by the applicable statute of limitations or good faith defenses and that Plaintiff cannot extend these limitations periods because Defendant's alleged violations were not willful. These issues remain in dispute. Both sides recognize that the resolution of these disputed issues is uncertain and creates substantial risk, which was one of the many factors weighing in favor of a negotiated resolution.

Class Counsel believe the terms of the proposed settlement, in this case, fall well within the "range of reasonableness" as the Settlement is fundamentally fair, reasonable and adequate, and achieve the goals envisioned by the FLSA and PMWA, especially when considering the risk, expense, complexity, and delay associated with further litigation. Nevertheless, the application of

each of the *Girsh* factors demonstrates the propriety of the proposed Settlement. *See* Section III.B, *supra*.

### A.  COMPLEXITY, EXPENSE, AND LIKELY DURATION OF THE LITIGATION

This factor is concerned with assessing the "'probable costs, in both time and money, of continued litigation.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 234 (3d Cir. 2001) (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995)). "By measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably." *G.M. Trucks,* 55 F.3d at 812.

In this case, the likely costs of continued litigation with respect to both time and money are high. This litigation has already gone on for over a year and has been diligently litigated by both sides. Defendant, to date, has vigorously contested Plaintiff's claims. There is little doubt that had the case proceeded; Defendants would have continued to vigorously oppose Plaintiff's claims at every possible turn. Further, much work has been done, including but not limited to: document review, full written discovery, and other fact-gathering, legal research, and comparison of analogous cases. If the Settlement is not granted final approval, additional litigation will be required, with no guarantee there will be any extra benefit to the Settlement Class, including substantial motions practice. A trial on the merits, and preparing for the same, would entail considerable expense on both sides. The result would not necessarily end the litigation, giving the right of the losing party to appeal. All of these facts weigh in favor of the Settlement. *See In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631, 642 (E.D. Pa. 2003) (noting that the "protracted nature of class action antitrust litigation means that any recovery would be delayed for several years," and "substantial and immediate benefits" to class members favors settlement approval); *Slomovics v. All for a Dollar, Inc.,* 906 F. Supp. 146, 149 (E.D.N.Y. 1995) (where litigation is

potentially lengthy and will result in great expense, settlement is in the best interest of the class members). Accordingly, this factor warrants the granting of final approval of this proposed Settlement.

### B. REACTION OF THE CLASS TO THE SETTLEMENT

To date, Class Counsel has not received a single objection to the proposed Settlement. The dearth of objections indicate approval by the Class members and weigh in favor of final approval. *See Varacallo v. Mass. Mutual Life Ins. Co.*, 226 F.R.D. 207, 237-238 (D.N.J. 2005) (finding objection requests of .003% "extremely low" and indicative of class approval of the settlement.[4] Indeed, this Court has approved settlements even where there was a high number of objections. *See, e.g., Zanghi v. FreightCar Am., Inc.*, No. 3:13-146, 2016 U.S. Dist. LEXIS 5914, *49 (W.D. Pa. Jan. 19, 2016) (granting approval of settlement despite court receiving "approximately 451 total objections to the settlement out of the 1,085 member class"). Moreover, the lack of requests for exclusion also compares favorably with other class action settlements. *See, e.g., Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 702 (W.D. Pa. 2015) (granting final approval of settlement where approximately 0.02% of the class opted out); *In re Janney Montgomery Scott*, 2009 U.S. Dist. LEXIS 60790, *25 (finding that no objections and only 10 requests for exclusion from a class of 1310 individuals "weighs greatly in favor of approving the settlement").[5]

### C. STAGE OF THE PROCEEDING AND THE AMOUNT OF DISCOVERY COMPLETED

---

[4] *See also In re Schering-Plough Corp.*, No. 08-1432, 2012 U.S. Dist. LEXIS 75213, *12 (D.N.J. May 31, 2012) (noting lack of objections and finding "silence constitutes tacit consent to the agreement… and is entitled to nearly dispositive weight").

[5] *See also In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, *16 (S.D.N.Y. Jan. 14, 2014) (noting that only 22 individuals in 1,230 member class asked to be excluded "demonstrates strong support for the settlement").

The parties have engaged in meaningful discovery, including the exchange of written discovery. In addition, as part of the Parties' settlement discussions, Defendants produced the payroll data for their hourly employees. This allowed Plaintiff to develop a comprehensive damage model. In short, Plaintiff has engaged in sufficient discovery to be fully informed as to the appropriateness of the proposed Settlement.

The Parties engaged in significant work to ferret out the contours of Plaintiff's claims. *See, e.g., Delandro v. County of Allegheny*, No. 06-937, 2011 U.S. Dist. LEXIS 55249, *33 (W.D. Pa. May 24, 2011)("The discovery and other investigations that the parties have undertaken render them sufficiently informed to make a determination about the fairness of a settlement."). Thus, the Court should be "confident that Class Counsel had an ample opportunity to acquire a thorough appreciation of the strengths and/or weaknesses of [their client's] case at the time that the Settlement Agreement was reached." *Frederick v. Range Res.-Appalachia, LLC*, No. 08-288, 2011 U.S. Dist. LEXIS 27350, *15-16 (W.D. Pa. Mar. 17, 2011). Accordingly, this factor also weighs in favor of final approval of the proposed Settlement.

### D.  RISKS OF ESTABLISHING LIABILITY AND DAMAGES

"These inquiries survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Ikon*, 209 F.R.D. at 105 (quoting *Prudential II*, 148 F.3d at 319)." In the instant matter, Plaintiff and Defendant both faced significant risks on the merits and the potential class and collective scope of this matter. This is evident from the many complex issues the parties would need to address going forward. First, Defendants would have argued that proof of any liability would require an individual class member by class member fact inquiry. Further, as noted above, damages are predicated upon a determination that liability – Defendants' failure to calculate

14

the regular rate for overtime purpose – has been established. Thus, "because proving damages is contingent upon first proving liability, the net effect of the fourth and fifth Girsh factors continues to provide support for approval of the settlement." *Jackson*, 136 F. Supp. 3d at 704. Consequently, these factors "favor[] approval of the settlement agreement." *Graudins*, 2017 U.S. Dist. LEXIS 25926, *21.[6]

### E. RISK OF MAINTAINING THE CLASS ACTIONS THROUGH THE TRIAL

As courts have aptly noted, "[t]here is always a risk of decertification in any class action." *Delandro*, 2011 U.S. Dist. LEXIS 55249, *33. "Consistent with this reality," courts have been "satisfied that the inherent difficulties of bringing a class action to trial weighs in favor of approving the settlements." *Id*., at *33-34 (quoting *In re Automotive Refining Paint Antitrust Litigation*, 617 F. Supp. 2d 336, 344 (E.D. Pa. 2007)). This case is no different.

### F. ABILITY OF THE DEFENDANT TO WITHSTAND A GREATER JUDGMENT

It is Plaintiff's counsel's understanding that the fracking industry is experiencing a general downturn, which renders any defendant's ability to pay in the restaurant industry a significant factor, in part due to the current global pandemic. *See* Migliaccio Dec. at ¶ 8. Indeed, "as it appears that defendants would not be able to withstand a greater judgment, resolution of this action through one settlement class benefits all plaintiffs by increasing the likelihood of collection." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 304 (E.D.N.Y. 2015) (approving settlement of class of restaurant workers where defendants declared they could not withstand

---

[6] It is Class Counsel's considered opinion that settlement on the proposed terms at this juncture, given the potential downside risks, upside rewards, and concomitant costs of going forward, is the most prudent course for Plaintiff and the Settlement Class to take. See *Zanghi*, 2016 U.S. Dist. LEXIS 5914, *58 (finding settlement reasonable "because of the risks associated with establishing liability and damages and securing a judgment within a reasonable time frame").

greater judgment); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp.

450, 540 (D.N.J. 1997) ("There is evidence that a greater judgment likely would adversely affect

Prudential's credit rating, which has already declined during these proceedings and would, thereby,

affect Prudential's ability to compete, its revenues, and its profitability."), *aff'd*, 148 F.3d 283 (3d

Cir. 1998). Thus, Plaintiff believes that continued litigation ran the risk of adversely affecting

Defendants' "ability to compete," which would have harmed all Settlement Class Members still

employed with Defendants.

### G. RANGE OF REASONABLENESS OF THE SETTLEMENT FUND IN LIGHT OF THE BEST POSSIBLE RECOVERY AND ALL THE ATTENDANT RISKS OF LITIGATION

"This inquiry measures the value of the settlement itself to determine whether the decision

to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong

case." *General Motors*, 55 F.3d at 806. In *General Motors*, the Third Circuit further explained

that:

> [I]n cases primarily seeking monetary relief, the present value of the
> damages plaintiffs would likely recover if successful, appropriately
> discounted for the risk of not prevailing, should be compared with
> the amount of the proposed settlement . . . The evaluating court
> must, of course, guard against demanding too large a settlement
> based on its view of the merits of the litigation; after all, settlement
> is a compromise, a yielding of the highest hopes in exchange for
> certainty and resolution.
> Id. (citation omitted.)

As discussed above, the Settlement confers a substantial benefit on the Settlement Class

Members. The proposed settlement represents approximately a full recovery of damages. *See*

Migliaccio Dec. at ¶ 9. This is squarely in line with other wage and hour cases. *See, e.g., Zorrilla*

*v. Carlson Rests., Inc.*, No. 14 Civ. 2740, 2017 U.S. Dist. LEXIS 180292, * (S.D.N.Y. Oct. 26,

2017) (granting preliminary approval in restaurant worker case where recovery was estimated to

account for between 20% and 115% of amounts owed); see also *Koenig v. Granite City Food & Brewery, LTD.*, No. 16-1396 (W.D. Pa.) (Dkt. No. 125) (granting final approval of previously certified class and collective action where plaintiff recovered approximately 41.7% of total damages).

Importantly, Plaintiff's counsel negotiated the Settlement to meet all the requirements of the FLSA collective action provisions, and the class action provisions of Rule 23, and specifically to provide an administrative process that would assure Settlement Class Members equal and sufficient due process. As described above, each Settlement Class Member will receive a portion of the Settlement Payment based on the amount of alleged damages they specifically incurred (e.g., the number of hours they worked). Thus, the more hours an individual Settlement Class Member worked, relative to his or her colleagues, the greater his or her share of the Settlement's proceeds.

Further, the Settlement does not unduly grant preferential treatment to the Plaintiff. Mr. Crigler is instead offered, subject to the Court's approval, a reasonable Service Payment that recognizes the added contribution she made to the prosecution of the litigation, including the burden and risks associated with bringing this action publicly. *See* Migliaccio Dec. at ¶¶ 26-27. Consequently, this factor also favors final approval of the proposed settlement.

### H.  OTHER FACTORS SUPPORTING APPROVAL OF THE SETTLEMENT

The resolution of disputed claims in a complex putative class and collective action of this kind serves the public interest. The substantial judicial resources that would need to be used to resolve this dispute can now be redirected toward other public ends. Moreover, it is in the public interest that hundreds of individuals who have lived and worked in the state of Ohio are eligible for a meaningful monetary award and that the parties, including the Defendant company, will not face the risks and expenses inherent in continued litigation.

Seven Point complied with the notice requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715 *et seq*. CAFA requires that "appropriate state and federal officials" be notified of a pending class action settlement in federal court. On June 1, 2020 Counsel served notice pursuant to CAFA regarding the pending class action settlement via first class mail to United States Attorney General Loretta E. Lynch, Ohio Attorney General Mike DeWine, and the attorneys general in the 18 states outside Ohio in which class members resided as of the date of the mailing. Rihn Dec. ¶ 14. The notice was sent with a CD containing a list identifying the class members and their states of residence as well as the settlement agreement, Plaintiff's Complaint, the parties' Joint Motion for Approval of Settlement, and the template notices to be sent to class members. *Id.* ¶ 1. No objections to, or concerns with, the parties' settlement have been raised by the U.S. Attorney General's Office or any office of the attorney general of any state.

Accordingly, these *Prudential* factors, and others[7], also counsels in favor of granting final approval of the proposed Settlement.

## VI.  PLAINTIFF'S ATTORNEYS' FEE AND EXPENSE REQUEST IS REASONABLE

Class Counsel respectfully requests the Court approve its fees and expenses in the amount of $49,570. Importantly, the fee application is fair and reasonable, and consequently appropriate,

---

[7] Courts in this Circuit have long held that deference should be given to the opinions of counsel familiar with the facts of the litigation. *See, e.g., Austin v. Pennsylvania Dep't of Corrs.,* 876 F. Supp. 1437, 1472 (E.D. Pa. 1995)("In determining the fairness of a proposed settlement, the Court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class."); *See also McLaughlin v. Phelan Hallinan & Schmieg, LLP,* No. 10-cv-01406, 2016 U.S. Dist. LEXIS 168889, **3-4 (W.D. Pa. March 20, 2016) (approving class action settlement that was obtained after "extensive investigation of the facts . . . by counsel with significant experience litigating class actions"). Moreover, the proposed settlement is the result of arms-length negotiations, including an in-person mediation. The participation of a mediator ensured that the settlement negotiations were conducted at arm's length and without collusion between the parties. *See, e.g., Bernhard v. TD Bank, N.A.,* No. 08-cv-4392, 2009 U.S. Dist. LEXIS 92308, *5 (D.N.J. Oct. 5, 2009); *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

given the work performed, the excellent result achieved, and the significant risks undertaken by Class Counsel.

### A. THE REQUESTED FEE IS REASONABLE UNDER THE LODESTAR APPROACH

Rule 23(h) of the Federal Rules of Civil Procedure provides that in a class action settlement, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Case law in the Third Circuit establishes two methods for evaluating the award of attorney's fees -- the lodestar approach and the percentage of the recovery approach. *In re GM Trucks Litig.*, 55 F.3d 768, 820-21 (3d Cir. 1995) (citing Report of the Third Circuit Task Force on Court Awarded Attorney Fees, 108 F.R.D. 237, 250-53 (1985)). In this case, Class counsel seeks to recover under the lodestar approach, in which has been applied in cases brought under fee-shifting provisions. *See*, *e.g.*, *Krishnan v. Cutler Grp., Inc.*, 2017 PA Super 312, 171 A.3d 856, 903 (Pa. Super. Ct. 2017). Under this approach, "[t]he number of hours reasonably expended on the litigation, [is then] multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L.Ed. 2d 40 (1983).

#### 1. Reasonable Hours and Expenses Expended in this Litigation

Here, Plaintiffs' Counsel obtained a significant benefit to the Settlement Class that recovers dollar-for-dollar the damages the Class would have likely recovered at trial. Migliaccio Dec. ¶ 9. Here, Plaintiff's Counsel's lodestar amount of $117,702.68 arises from over 200 hours spent litigating this matter. *See* Rihn Dec. ¶ 18, Migliaccio Dec. ¶ 18. After all, all of the work performed by counsel was necessary to the succeful prosecution of Plaintiff's case, including: conferring with named Plaintiff and investigating the claims on his behalf, performing factual and legal research on the legal claims at issue, drafting a well-pled complaint, preparing for and attending the initial case management conference, drafting and serving interrogatories and document

requests upon the defendant, reviewing documents produced by defendant, reviewing and analyzing defendant's voluminous pay records and creating a damages model for all class members, preparing for and attending the in-person mediation including preparing a detailed mediation statement, negotiating the settlement, drafting the settlement agreement, drafting the preliminary approval motion and class notice, notifying the state attorneys general, and drafting the instant motion. All of this work was necessary to the successful prosecution and resolution of this case, and the Court should therefore not adjust the requested fee award downwards. Migliaccio Dec. ¶¶ 18 – 20.

Plaintiff's Counsel's expenses total $3035.66 and include filing fees, air travel, meals and lodging, mediation expenses, and mailing expenses. All of these expenses were necessarily incurred in connection with the prosecution of this litigation. Migliaccio Dec. ¶¶ 24 – 25.

### 2. Reasonable Hourly Rate

Here, Plaintiff's Counsel are petitioning for all work performed in this litigation. As of the filing of this memorandum, the office of Robert Pierce, P.C. & Associates have collectively spent over 50 hours working on this case, for a total lodestar of $29,975. Rihn Dec. ¶ 18. The office of Migliaccio & Rathod LLP has collectively spent over 150 hours working on this case, for a total amount of $87,727.68. Migliaccio Dec. ¶ 18. The hourly rate for Robert Pierce, P.C. & Associates was $550 per hour for partner work. Rihn Dec. ¶ 19. The hourly rates for Migliaccio & Rathod LLP ranged from $372 per hour to $747. Migliaccio Dec. ¶ 19.

This Court and courts across the county have awarded Counsel's fees using Migliaccio & Rathod LLP's rates in comparable complex civil litigation also taken on a contingency basis. *See*, *e.g.*, *Bland v. Calfrac Well Svcs. Corp.*, Case No. 12-cv-1407, 2015 U.S. Dist. LEXIS 182574, *3 (W.D. Pa. Dec. 17, 2015) (approving requested fee award and finding that class counsel, including

M&R's attorneys, are "qualified and experienced and have litigated this action successfully, thereby demonstrating their adequacy as counsel"); *Carlotti v. Asus Comput. Int'l*, No. 18-cv-03369-DMR, 2020 U.S. Dist. LEXIS 108917, at \*17-18 (N.D. Cal. June 22, 2020) (approving M&R's rates at final approval of class action settlement); *Whitfield v. Trinity Rest. Grp., LLC*, No. 18-10973, 2019 U.S. Dist. LEXIS 182055 (E.D. Mich. Oct. 3, 2019) (approving M&R's rates at approval of collective action settlement); *Thorn v. Bob Evans Farms, LLC.*, Case No. 12-cv-768, 2016 U.S. Dist. LEXIS 195207, \*8 (S.D. Ohio Feb. 26, 2016) (finding that the lodestar for all class counsel, including M&R's attorneys, was reasonable, "[c]onsidering the competence of class counsel in prosecuting this complex litigation, and the risks associated with the prosecution of the claims of the settlement class"). Accordingly, Class Counsel's rates should be approved.

"Federal courts in this circuit have frequently approved fee award multipliers in the range of 1 to 4." *Frederick*, 2011 U.S. Dist. LEXIS 27350, \*3613; *see also Jackson v. Wells Fargo Bank, N.A.,* 136 F. Supp. 3d 687, 716-717 (W.D. Pa. 2015) (noting that a lodestar multiplier of 2.83 fell "within the acceptable range identified" by the Third Circuit and was "further supported by the excellent result achieved for the class and the efficiency with which class counsel resolved the matter"). Here, Counsel's Lodestar amount totals $49,570 and the requested fee constitutes a negative multiplier of 2.37. Migliaccio Dec. ¶ 24. Accordingly, Class Counsel's fee request is eminently appropriate as it results in an award of far less than Class Counsel's actual time incurred in this case.

## VII.   THE INCENTIVE AWARD TO PLAINTIFF IS REASONABLE

Courts routinely grant enhancement awards to named plaintiffs in recognition of their efforts in achieving the results for the class. *See, e.g., Varacallo v. Mass. Mut. Life Ins. Co.,* 226 F.R.D. 207, 257 ("The Court finds ample authority in this and other circuits for the approval of

incentive awards."). In *Varacallo,* the district court collected cases and found that incentive awards ranged from $1,000 to $50,000. *Id.,* at 257-258. Ultimately, the *Varacallo* court granted incentive awards of $10,000 each to five named plaintiffs concluding that their assistance to counsel was "invaluable to bringing about this Settlement." *Id.,* at 259.

Here, the result in this litigation could not have been achieved without the substantial efforts of Plaintiff. Mr. Crigler. Plaintiff was engaged during the litigation process and provided invaluable assistance to Class Counsel, including assisting with the drafting of the complaint, assisting in the review of key material provided by Defendants, and making himself available during the mediation to confer with counsel. *See* Migliaccio Dec. at ¶¶ 26-27.

Accordingly, and in recognition of the substantial benefit he conferred on the Settlement Class and his efforts generally, a modest incentive award of $2,500 is appropriate. *See, e.g., Haught,* 2016 U.S. Dist. LEXIS 45054, **19-21 (in a wage and hour suit, approving award of $5,00 to named plaintiff who responded to "extensive" written discovery).[8] As with the other requests, no Settlement Class Member has objected to Plaintiff's requested Service Payment award. As such, Plaintiff respectfully submits that the Service Payment Award is exceedingly reasonable and should be approved.

## VIII.    CONCLUSION

For the foregoing reasons, this Court should enter an order certifying the Settlement Class, granting Class Counsel's fee request, granting a Service Award in the amount of $2,500 to Plaintiff, and approving the Settlement as final.

---

[8] *See also Leap v. Yoshida*, No. 14-3650, 2016 U.S. Dist. LEXIS 57819, *29 (E.D. Pa. May 2, 2016) (approving "modest service award" of $5,000 where motion explained that plaintiff "was critical to having the case go forward"); *Reyes*, 2011 U.S. Dist. LEXIS 115984, *24 (approving $15,000 service award to each of three representative plaintiffs where tip-related wage settlement fund was $300,000).

Dated August 28, 2020                    Respectfully Submitted:

/s/ *D. Aaron Rihn, Esquire*
D. Aaron Rihn, Esquire (*pro hac vice*)
ROBERT PEIRCE & ASSOCIATES, P.C.
707 Grant Street, Suite 2500
Pittsburgh, PA 15219-1918
Tel: (412) 281-7229
Fax: (412) 281-4229
Email: arihn@peircelaw.com

Nicholas A. Migliaccio, Esquire (*pro hac vice*)
Jason S. Rathod, Esquire (*pro hac vice*)
MIGLIACCIO & RATHOD LLP
412 H St., NE
Suite 302
Washington, DC 20002
Tel: (202) 470-3520
Fax: (202) 800-2730 (Fax)
Email: nmigliaccio@classlawdc.com
          jrathod@classlawdc.com

*Counsel for Plaintiff*

## **PROOF OF SERVICE**

A copy of this document was served by the Court's ECF System on counsel of record on August 28, 2020, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

_/s/ D. Aaron Rihn_
D. Aaron Rihn, Esquire
